IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| N.S., a minor, through his parents, KELLIE SMEDBERG, and MARK SMEDBERG, individually and together as Husband and Wife, | CIVIL DIVISION |
| | CASE NO.    2:24-cv-219 |
| *Plaintiffs,* | **COMPLAINT** |
| v. | |
| WESTERN PENNSYLVANIA SCHOOL FOR BLIND CHILDREN; Superintendent HEIDI ONDEK, in her individual and official capacity; COLLEEN BENTON, in her individual and official capacity; ERIN KELLY, in her individual and official capacity; MEGAN SIMMEN, in her individual and official capacity; and Principal LISA REALE, in her individual and official capacity, | Filed on Behalf of: Plaintiff |
| | Counsel of Record for this Party: |
| | Monte J. Rabner, Esquire |
| | PA ID No. 68251 |
| *Defendants.* | Rabner Law Offices, P.C. |
| | 222 Boulevard of the Allies |
| | Floor 2 |
| | Pittsburgh, PA 15222 |
| | (412) 765-2500 |
| | (412) 765-3900 (fax) |
| | **JURY TRIAL DEMANDED** |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

N.S., a minor, through his parents, KELLIE
SMEDBERG, and MARK SMEDBERG,
individually and together as Husband and
Wife,

CIVIL DIVISION

CASE NO.

        *Plaintiffs,*

v.

WESTERN PENNSYLVANIA SCHOOL
FOR BLIND CHILDREN; Superintendent
HEIDI ONDEK, in her individual and official
capacity; COLLEEN BENTON, in her
individual and official capacity; ERIN
KELLY, in her individual and official
capacity; MEGAN SIMMEN, in her
individual and official capacity; and Principal
LISA REALE, in her individual and official
capacity,

        *Defendants.*

## COMPLAINT

**AND NOW**, comes N.S., a minor, through his parents, Kellie Smedberg, and Mark Smedberg, individually and together as Husband and Wife by and through counsel Monte J. Rabner, and RABNER LAW OFFICES, P.C., and hereby alleges the following:

### I.

### PARTIES

1. **Kellie Smedberg** ("Mrs. Smedberg or "Plaintiff") and **Mark Smedberg** ("Mr. Smedberg" or "Plaintiff") are the parents of **N.S.** ("N.S." or "Plaintiff"), born on October 14, 2018. The Smedbergs reside at 134 Whippoorwill Road, Butler PA 16001. N.S. is currently five years old.

2.  At all times hereto, N.S. has multiple behavioral and medical diagnoses, including Autism Spectrum Disorder with language impairment, Global Developmental Delay, and Cortical visual impairment.

3.  In other words, N.S. has trouble communicating and requires full time care as well as specific attention regarding N.S.'s day-to-day life. N.S. is constantly being taught to use words, gestures, or other strategies to share N.S.'s wants, needs, and interests.

4.  N.S. has a "disability" under the Americans with Disabilities Act ("ADA") and Section 504, due to N.S.'s impairments, he is substantially limited in major life activities including learning, mental processing, and interacting with others.

5.  The **Western Pennsylvania School for Blind Children** ("WPSBC" or "Defendant") is a private chartered school located at 201 N Bellefield Ave, Pittsburgh, PA 15213. WPSBC educates blind or visually impaired Children and young adults. The WPSBC receives federal funding. It is a nonprofit organization and exempt from income tax.

6.  Defendant **Hiedi Ondek** is, and was at all times material hereto, the Superintendent of the WPSBC.

7.  Defendant **Colleen Benton** was, and all times material hereto, an agent or employee of the WPSBC acting as a nurse practitioner.

8.  Defendant **Erin Kelly** was, and all times material hereto, an agent or employee of the WPSBC acting as N.S.'s case manager.

9.  Defendant **Megan Simmen** was, and all times material hereto, an agent or employee of the WPSBC acting as N.S.'s teacher.

10. Defendant **Lisa Reale** was, and all times material hereto, an agent or employee of the WPSBC acting as the principal.

## II.

## JURISDICTION AND VENUE

11. This action arises under the Constitution and the laws of the United States, and is brought pursuant to 42 U.S.C. §1983, 29 U.S.C. § 794(a); 42 U.S.C. § 12131, and 42 U.S.C. § 15009. This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 1983, and 28 U.S.C. §§ 1331 and 1343, and pendent jurisdiction over the state law claims.

12. Venue is proper in the District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. §1391(b). All of the events herein occurred within the state of Pennsylvania, and upon information and belief, all of the parties are residents of the State.

## III.

## FACTS RELEVANT TO ALL COUNTS

### A. **Background**

13. The Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

14. At all times hereinafter, all staff members of the WPSBC and all individual Defendants herein were servants, agents, and/or employees of the WPSBC and working in their capacities and in their scope of employment.

15. At all times material hereto, N.S. was a minor.

16. At all times material hereto, N.S. was a student at the WPSBC.

17. As a result of N.S.'s disabilities, he was made eligible for special education services and supports pursuant to the Individual with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1401 *et seq.*

18. In 2021, Mr. and Mrs. Smedberg met with representatives of the WPSBC to discuss, among other things, N.S.'s needs, his abilities, their concerns, and the education plan.

19. At the meeting, all individuals involved established that the WPSBC would conduct weekly meetings with Mr. and Mrs. Smedberg and N.S.'s entire team, including the case worker, school nurse, the occupational therapist, the physical therapist, the teacher, and on some weeks, the principal.

20. Before N.S. started at the WPSBC he attended physical therapy three-four hours a week, speech therapy, one-two hours a week occupational therapy three-four hours a week, and developmental therapy one hour a week.

21. On or about October 20, 2021, N.S. officially started at the WPSBC. At this time, the WPSBC undertook all of N.S.'s prior therapies, which included, but was not limited to, physical therapy, speech therapy, vision therapy, and occupational therapy.

**B. <u>Initial Behavior Changes</u>**

22. In March of 2022, when N.S. came home from the WPSBC, Mr. and Mrs. Smedberg noticed a bite mark on N.S.'s arm. However, no teacher or other supervisor at the school was able to say whether N.S. was bit by a classmate.

23. For the following few weeks, N.S. began hitting himself, was fussy, and became anxious when he had to get on the bus and attend the WPSBC. N.S. had not exhibited self-harming behavior prior to starting at the WPSBC.

24. On March 30, 2022, N.S. attended school as normal, however he began banging his head on the floor shortly after arrival, enough to leave significant bruising on his forehead. N.S. also attempted to punch himself.

25. The next day, N.S. was behaving similarly. On or about April 1, 2022, N.S.'s team met to discuss N.S.'s self-injurious behavior without Mr. and Mrs. Smedberg. At this meeting, upon information and belief, the team discussed the possibility of getting a helmet for N.S.,

to curb some of N.S.'s self-injuries. The helmet was suggested by a member of the WPSBC. However, a few days later, the WPSBC behavior specialist, Alex Hemingway, suggested to wait and document N.S.'s behavior before getting him a helmet, noting a concern that teachers often used helmets out of convenience and can often make self-injurious behavior worse.

26. On or about April 11, 2022, N.S.'s teacher, Megan Simmen contacted Mrs. Smedberg to discuss N.S.'s concerning behavior. Notably, Megan disagreed with Alex regarding the helmet, and felt that immediate action needed to take place. She stated she was going to talk with N.S.'s occupational therapist to find a helmet. Megan then recommended Mrs. Smedberg purchase a pair of "autistic gloves" to use or a pair of winter mittens that could be secured with tape.

27. Mrs. Smedberg was uncomfortable with this idea because she did not want N.S.'s hands to be entrapped. However, Mrs. Smedberg mentioned she had a pair of jiu jitsu gloves that leave the hand completely free to grab things. Megan agreed these gloves would be a great idea. Later that week, Megan informed Mrs. Smedberg that they were able to find a helmet.

28. Easter break shortly followed, over which, N.S. had no instances of hitting, hurting, otherwise trying to inflict any injuries on himself. N.S. returned to school from Easter break at the end of April. Throughout the next few weeks, there were multiple instances of N.S. arriving home with bruising.

29. In early May, N.S. began exhibiting more concerning behavior. He began to have severe separation anxiety from Mrs. Smedberg and his educational and social skills began to decline. Notably, N.S. did not want to attend the WPSBC, often throwing tantrums before he had to get on the school bus. Although previously, he had been excited about school.

C. **CYS Report**

30. The Smedbergs used the gloves and helmets a few times before telling Megan to no longer use the gloves at school, as Mrs. Smedberg was worried that they were causing N.S. to have irritation on his wrists.

31. On May 10, 2022, Megan expressed that N.S. required a lot more attention and that she could not promise that level of care.

32. Later that same day, the school nurse, Colleen Benton and N.S.'s caseworker Erin Kelly called Mrs. Smedberg. They expressed they believed N.S. had something neurologically wrong with him because he was "inconsolable" at school. However, Mrs. Smedberg correctly expressed N.S. did not have these issues at home, or otherwise never had these issues before attending the WPSBC.

33. Then, the two proceeded to tell Mrs. Smedberg they were filing a report with CYS. However during this conversation, they explicitly stated that they ***did not suspect any child abuse.*** They expressed they had no choice because of the helmet and gloves, although these were their recommendations and they implemented them.

34. Importantly, WPSBC expressed if Mr. and Mrs. Smedberg filed a report against WPSBC, then it could be deemed as "retaliation."

35. Based on information and belief, Collene Benton, one of the school nurses, was the individual who officially filed the falsified report to CYS.

36. When N.S. arrived home from school on May 10, 2022, the helmet was not with N.S. as it normally was.

37. On May 11, 2022, a CYS caseworker contacted Mrs. Smedberg to conduct an interview. Jess Wagner, the Butler County CYS caseworker met Mr. and Mrs. Smedberg at their home

that same day. She explained this was an egregious violation and there were serious accusations of physical neglect of a child, and failure to supervise.

38. The CYS caseworker informed the Smedbergs that the WPSBC accused Mrs. Smedberg of the following offenses, including but not limited to: requiring N.S. to sleep in a helmet and gloves; failing to supervise N.S.; and restraining N.S., and essentially neglecting N.S..

39. Immediately, upon visiting the Smedberg's home, the CYS caseworker was aware that there was no child abuse, just a concerned family who greatly cared for N.S.. The caseworkers were made aware that the WPSBC was responsible for the helmet and never informed CYS of N.S.'s pertinent information.

40. On May 12, 2022, N.S. visited Dr. Patil at Children's Ophthalmology. Dr. Patil immediately realized the change in N.S.'s behavior, and how severe it was.

41. Additionally, while N.S. was a patient of Dr. Gaesser prior to attending WPSBC, Dr. Gaesser began seeing N.S. for behavior issues after beginning his attendance at WPSBC, since his behavior had drastically changed. The CYS case regarding the Smedbergs was rightfully terminated.

42. On May 13, 2022, the Smedbergs were contacted by the CYS district office, who came to their home and conducted an interview. The interview also quickly reached the conclusion that no abuse was occurring.

43. At the same time, in early May of 2022, the Smedbergs noticed that on the Remind App, where they actively communicated with the WPSBC staff members, several archived messages discussing N.S. were deleted. Neither Mr. nor Mrs. Smedberg deleted the messages, and, upon information and belief, there was no system in place on the app to actively delete said messages.

44. On June 7, 2022, Mrs. Smedberg informed the school that they would be unenrolling N.S. from the WPSBC immediately.

45. On June 14, 2022, Mr. and Mrs. Smedberg met with principal Lisa Reale, who apologizes profusely for the events that unfolded. Ms. Reale agreed that ***it was clear there was no abuse.***

46. Ms. Reale admitted that Erin Kelly and Colleen Benton's reports were incorrect and inaccurately represented the situation, otherwise – falsified multiple reports.

47. Furthermore, upon information and belief, it became apparent that N.S. was wrongfully restrained during his time at the WPSBC. It is believed and therefore averred that the staff used multiple retraining devices improperly and illegally which were never noted in his IEP plan such as belting N.S. to a chair for irregular amounts of time, keeping a helmet on N.S.'s head, keeping N.S.'s hands enclosed, or otherwise.

48. The Smedbergs informed WPSBC after the CYS visits in May that N.S. would not be returning. N.S. was then officially unenrolled when school was out of session in the summer.

**D. <u>Effects of Abuse Inflicted on N.S.</u>**

49. Upon information and belief, the WPSBC staff implemented restraint and seclusion instead of modifying individualized positive behavior plans based upon a thorough assessment of N.S.

50. It is believed and therefore averred that the WPSBC staff never utilized occupational therapy or assistive technology evaluations. Instead, it is believed and therefore averred that the WPSBC staff frequently used mechanical restraint as the primary means of

intervening. As these events occurred repeatedly over time, the use of mechanical restraints became a routine practice.

51. Upon information and belief, N.S. was often physically restrained and forcibly placed in the restraint chair and made to wear a helmet and gloves for elongated periods of time.

52. The WPSBC staff's on-going use of a restraint chair, belt and/or strap for the purpose of restraining N.S. is a direct violation of Pennsylvania Laws and is expressly prohibited.

53. Upon information and belief, the WPSBC staff inappropriately and unlawfully used the restraint chair as a punitive form of discipline and as a means to gain control and compliance of N.S.'s behavior. Often times, N.S. was not released from the restraint chair until staff determined that he had "calmed down."

54. Upon information and belief, the WPSBC staff inappropriately and unlawfully used restraints as a punitive form of discipline because the WPSBC could not provide N.S. with the proper care and attention that they claim to be proficient in providing to individuals such as N.S..

55. The WPSBC staff failed to utilize alternative de-escalation techniques that could have successfully re-directed N.S. other than the use of a restraint chair.

56. Upon information and belief, the Smedbergs were never fully informed of all information relevant to the use of mechanical restraints against N.S. on a routine basis. The Smedbergs never understood or agreed to the routine use of mechanical restraints against N.S. and never understood how much time N.S. was kept restrained.

57. WPSBC staff failed to properly document the use of restraint in N.S.'s Individual Education Plan, including the specific circumstances, procedures and staff involved if there is a possibility that restraint/seclusion might be utilized.

58. Initially, N.S. was happy when he began attending WPSBC. He was a calm and quiet. Over time, N.S. began demonstrating outward signs of not wanting to attend school, increased behavior problems such as screaming, not sitting still, separation anxiety from his mother, tantrums when Mrs. Smedberg would play his "school song," and increased crying. These symptoms and behaviors were not present in the same severity or degree, if at all, before N.S. started attending WPSBC.

59. As a result of Defendants' policy, custom or practice of abuse through mechanical restraints in the absence of any emergency, and for prolonged periods of time, primarily as a result of behavioral noncompliance, N.S.'s behavior problems continued to escalate, he became anxious and depressed, and the frequency of his panic attacks, separation anxiety, and physical harm on himself dramatically increased.

60. N.S.' s change in behavior demonstrates that he became *more* unsafe as a result of the restraints and timeouts. Despite the fact that N.S.' s behavior became increasingly problematic and escalating in severity, WPSBC staff did nothing to communicate with his family, seek to modify the behavioral support plan, or provide written documentation that N.S. was being restrained. N.S.'s Behavior Support Plan continued to go unchanged.

61. N.S. experienced significant physiological, psychological, and behavioral decline as a student at WPSBC as a result of the abusive restraint practices. N.S. also experienced a significant cognitive decline.

62. For example, N.S. has since lost the abilities to independently manage certain tasks such as eat properly on his own, playing with his toys, and successful potty training. Furthermore, he is now on anxiety medicine he did not take previous to his time at WPSBC and has severe attachment issues with Mrs. Smedberg.

63. As a result of Defendants' policy, custom or practice of unlawful restraint, N.S. has experienced a significant decline in his cognitive abilities and adaptive behaviors. The impact to N.S. as a result of being subjected to a pattern and practice of abuse by staff at WPSBC as described above is the only explanation for N.S.'s severe decline in intellectual ability. Sadly, N.S. has not fully recovered from his experience at WPSBC

**E.   Administrative Remedies under the IDEA**

64. In this action, Plaintiffs seek money damages solely to redress the physical, psychological and emotional injuries of N.S., suffered as a result of Defendants' acts and omissions as more fully described herein. In this regard, Plaintiffs do not seek relief that is also available through the IDEA's administrative dispute resolution procedures.

65. N.S. no longer attends the WPSBC. Plaintiffs have no dispute with N.S.'s current educational situation. In this regard, Plaintiffs do not seek relief that is also available through the IDEA's administrative dispute resolution procedures.

## IV. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Violation of Fourth Amendment of the United States Constitution Pursuant to 42 U.S.C. § 1983**

**(Against All Defendants)**

66. Plaintiffs incorporate all allegations set forth above as if more fully set forth herein.

67. N.S. has a Constitutional right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizures and to be secure in his person and to maintain his bodily integrity against unreasonable assaults of his person.

68. Defendants restrained N.S.'s liberty to the degree that a reasonable person would not feel free to leave.

69. Defendants' conduct in unlawfully restraining N.S. constitutes a seizure within the meaning of the Fourth Amendment's prohibition against unreasonable seizures.

70. The seizures of N.S. at WPSBC were not justified at their inception nor reasonably related in scope to the circumstances which justified the interference in the first place.

71. Defendants' conduct was objectively unreasonable under the circumstances and constituted a substantial departure from accepted professional judgment, practice and standards, especially when considered in light of the educational objectives N.S. was trying to achieve.

72. Defendants' conduct in physically seizing N.S. unlawfully subjected N.S. to excessive, unreasonable, and unnecessary physical force.

73. Defendants' actions, as described above, were objectively unreasonable, willful and wanton, in light of the facts and circumstances.

74. The School District's and the Board of Education's official policy, practice or custom of utilizing unlawful restraint and seclusion practices as a punitive response to N.S.'s problem behaviors even in the absence of any emergency circumstances, actually caused a violation of N.S.'s federally protected right to be free from unreasonable seizures under the Fourth Amendment to the United States Constitution.

75. The School District' s and the Board of Education's official policy, practice or custom of failing to adequately train and supervise its faculty and staff in the use of force and restraint when seizing special education students with disabilities, actually caused a violation of N.S.'s federally protected right to be free from unreasonable seizures under the Fourth Amendment to the United States Constitution.

76. The acts and omissions of the individual Defendants as described herein violated the clearly established rights of N.S. of which reasonable people in Defendants' positions knew or should have known.

77. Defendants' acts and/or omissions were conducted within the scope of their official duties and employment and under color of state law. Defendants' acts and/or omissions, as described herein, intentionally deprived N.S. of the securities, rights, privileges, liberties and immunities secured by the Constitution of the United States and caused him other damages in an amount to be proven at trial.

78. Defendants' official policy, practice or custom, as described herein, was the legal and proximate cause of N.S.'s injuries.

79. As a direct and proximate result of Defendants' acts and omissions N.S. has suffered and will continue to suffer from serious physical injuries, pain and suffering, emotional distress, and functional impairment which has, and will permanently, substantially reduce the quality of his life.

**WHEREFORE**, the Plaintiffs respectfully request this Court enter judgment in their favor and against each of the Defendants, and award them all relief allowed by law, including but not limited to, their compensatory, consequential, and special damages in an amount to be proven at trial, appropriate relief at law and equity, economic and non-economic losses, punitive damages to be determined at trial, attorney's fees and costs associated with this action, pre and post judgment interest at the highest lawful rate, and for such other and further relief as allowed by law.

## SECOND CAUSE OF ACTION

### Supervisor Liability Pursuant to 42 U.S.C. §1983

**(Against WPSBC, Heidi Ondek, and Lisa Reale in their Individual and Official Capacities)**

80. Plaintiffs incorporate all allegations set forth above as if more fully set forth herein.

81. Defendants WPSBC, Heidi Ondek, Lisa Reale, and all other supervising authorities had an obligation to train and supervise their subordinates regarding the use of force, restraint and seclusion in a school setting in order to ensure the safety and well-being of students entrusted to their care and supervision.

82. Absent effective supervision by Defendants WPSBC, Heidi Ondek, and Lisa Reale harm was not merely foreseeable, but was highly likely, given the circumstances described herein.

83. Defendants failed to properly train, supervise and discipline their subordinates and acted knowingly, or with deliberate indifference, that N.S.'s constitutional rights would be violated.

84. Defendants failed to safeguard against constitutional transgressions by those under their control. This is evident by the pattern and practice of unlawful restraint and seclusion that was inflicted on N.S. while he attended WPSBC.

85. There is an affirmative link between the constitutional deprivation of N.S.'s rights and Defendants personal participation in, exercise of control and direction regarding, and their failure to train and supervise, those that directly inflicted the unlawful restraints upon N.S., which demonstrates their authorization or approval of such misconduct.

86. Defendants were either "grossly negligent" or "deliberately indifferent" in failing to take precautions against the constitutional violations that occurred against N.S.

87. Defendants breach of their duty to train and supervise their subordinates is the proximate and legal cause of N.S.'s injuries.

88. As a result of Defendants failure to discharge their supervisory duties, Defendants routinely subjected N.S. to the unlawful use of restraint and timeout practices as a punitive measure for alleged misbehavior.

89. Had Defendants made any effort to properly train and supervise the Defendants, N.S. would not likely have suffered the egregious and conscience-shocking abuses by Defendants as described herein.

90. Defendants failure to properly train and supervise their subordinate employees was the moving force and proximate cause of the violation of N.S.'s constitutional rights as described herein.

91. The acts and omissions of the Defendants as described herein violated the clearly established rights of N.S. of which reasonable people in these Defendants' positions knew or should have known.

92. Defendants acts and/or omissions were conducted within the scope of their official duties and employment and under color of state law. These Defendants' acts and/or omissions, as described herein, intentionally deprived N.S. of the securities, rights, privileges, liberties and immunities secured by the Constitution of the United States, and caused him other damages in an amount to be proven at trial.

93. As a direct and proximate result of Defendants' acts and omissions N.S. has suffered and will continue to suffer from serious physical injuries, pain and suffering, emotional distress, and functional impairment which has, and will permanently, substantially reduce the quality of his life.

**WHEREFORE**, the Plaintiffs respectfully request this Court enter judgment in their favor and against each of the Defendants, and award them all relief allowed by law, including but not limited

to, their compensatory, consequential, and special damages in an amount to be proven at trial, appropriate relief at law and equity, economic and non-economic losses, punitive damages to be determined at trial, attorney's fees and costs associated with this action, pre and post judgment interest at the highest lawful rate, and for such other and further relief as allowed by law.

## THIRD CAUSE OF ACTION

### Use of Mechanical Restraints in Violation of the Individuals with Disabilities Education Act

### (Against All Defendants)

94. Plaintiffs incorporate all allegations set forth above as if more fully set forth herein.

95. The central purpose of the IDEA is to ensure that children with disabilities are provided an appropriate education and that the rights of children with disabilities and their parents are protected.

96. The WPSBC failed to comply with the procedures set forth in the IDEA.

97. The WPSBC failed to provide N.S. an appropriate education as required under the IDEA.

98. An appropriate education consists of educational instruction specifically designed to meet the unique needs of the disabled child, supported by such services as are necessary to permit the child to benefit from the instruction, and that are provided in conformity with a child's individualized education program ("IEP"). The above-described conduct of the Defendants violated N.S.'s procedural and substantive rights under the IDEA. N.S. was abused, his legal and human rights were violated, he was physically and mechanically restrained and secluded without proper basis, and he was restrained and secluded as both a punishment and as a substitute for a program of services and supports.

99. A student's IEP must address the specific circumstances, procedures and staff involved if there is a possibility that restraint or seclusion might be utilized. N.S.'s IEP did not anticipate the need for physical or mechanical restraint or seclusion and it did not address the specific circumstances, procedures and staff involved if there had been a possibility that restraint or seclusion might be utilized.

100.    The WPSBC must follow and properly implement the student's IEP. The School District failed to follow or properly implement N.S.'s IEP by routinely restraining and secluding him as a means of punishment and in an attempt to control N.S.'s behavior.

101.    An IEP meeting must follow the use of restraint to determine if the supports and services identified in the student's behavior support plan are being provided and if so whether they are appropriate and what changes may be needed. The WPSBC failed to convene any IEP meeting following any incident where restraint was used against N.S..

102.    The WPSBC is required to provide services and supports by qualified personnel who are properly trained in the use of positive behavior interventions and supports and other strategies to address a student's challenging behaviors. The WPSBC and the District failed to train its personnel in the use of positive behavior interventions and supports and other strategies to address a student's challenging behaviors or in the proper use of restraint and seclusion.

103.    The WPSBC is required to provide notice to obtain *informed* consent from, and ensure the meaningful participation of, the student's parent before changing the student's IEP or making substantive decisions that may affect the student's access to an education. The School District failed to notify the Smedbergs fully, obtain inform consent from the

Smedbergs, or ensure that the Smedbergs participated in making substantive decisions that affected Naoh's access to an education or before changing his IEP.

104.     The WPSBC is required to document and report each instance where restraint or seclusion is used. The WPSBC and District failed to document or report any instances where restraint or seclusion was used against N.S.. Moreover, it is believed that the Defendants deleted or otherwise hid the communications between the WPSBC and the Smedbergs regarding the use of restraints or otherwise.

105.     As a direct and proximate result of Defendants' acts and omissions N.S. has suffered and will continue to suffer from serious and permanent physical injuries, pain and suffering, emotional distress, and functional impairment which has, and will permanently, substantially reduce the quality of his life.

**WHEREFORE**, the Plaintiffs respectfully request this Court enter judgment in their favor and against each of the Defendants, and award them all relief allowed by law, including but not limited to, their compensatory, consequential, and special damages in an amount to be proven at trial, appropriate relief at law and equity, economic and non-economic losses, punitive damages to be determined at trial, attorney's fees and costs associated with this action, pre and post judgment interest at the highest lawful rate, and for such other and further relief as allowed by law.

## FOURTH CAUSE OF ACTION

### Violation of PA. Code § 711.46 and Violation of 55 PA Code 3800.210

### (Against All Defendants)

106.     Plaintiffs incorporate all allegations set forth above as if more fully set forth herein.

107.     The strapped chair and helmet as well as any other devices the WPSBC used on N.S. are mechanical restraints that restricted N.S.'s movement or function.

108.     The use of mechanical restraints are prohibited under 55 Pa. Code §3800.210.

109.     The use of mechanical restraints under Pa. Code §711.46 must be employed only when specified by an IEP. Furthermore, if restraints are used, the school must notify the use of the restraint. The WPSBC failed to use less restrictive measures and techniques, nor did they fully inform the Smedbergs about the extent the restraints were used on N.S. The use of aforementioned mechanical restraints was not specified in N.S.'s IEP.

110.     These mechanical restraints were not used for the purpose of supporting bodily function, medical treatment, or preventing injury, as the restraints were used on N.S. for elongated periods of time and often made him increasingly agitated.

111.     Furthermore, the WPSBC failed to follow the procedures laid out in 55 Pa. Code §3800.210 or Pa. Code §711.46.

112.     As a direct and proximate result of Defendants' use of such restraints, N.S. has suffered and will continue to suffer from serious and permanent physical injuries, pain and suffering, emotional distress, and functional impairment which has, and will permanently, substantially reduce the quality of his life.

**WHEREFORE**, the Plaintiffs respectfully request this Court enter judgment in their favor and against each of the Defendants, and award them all relief allowed by law, including but not limited to, their compensatory, consequential, and special damages in an amount to be proven at trial, appropriate relief at law and equity, economic and non-economic losses, punitive damages to be determined at trial, attorney's fees and costs associated with this action, pre and post judgment interest at the highest lawful rate, and for such other and further relief as allowed by law.

**FIFTH CAUSE OF ACTION**

**Violation of Section 504**

**(Against All Defendants)**

113.     Plaintiffs incorporate all allegations set forth above as if more fully set forth herein.

114.     Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 ("Section 504"), and the regulations promulgated thereunder, 34 C.F.R. Part 104 et seq., prohibit discrimination against persons with disabilities. Section 504 prohibits the exclusion from the participation in, or being denied the benefits of, or being subjected to discrimination under, any program or activity receiving Federal financial assistance. Congressional authority to condition Federal funding under this Act is derived from the enumerated powers contained in Article I, Section 8 of the United States Constitution.

115.     The WPSBC is a recipient of federal financial assistance.

116.     At all times material hereto, N.S. was a qualified individual with a disability.

117.     N.S. was discriminated against by Defendants based on his disability.

118.     The practices described above, including but not limited to unlawful use of restraint and seclusion practices, denied N.S. the benefits of participation in the services, programs and activities affiliated with public education.

119.     The above-described conduct of the Defendants violated N.S.'s rights under Section 504 and the regulations promulgated thereunder by denying N.S. the benefits of receiving full and equal access to the public education programs and activities to which he was

entitled within the WPSBC. N.S. was grossly mistreated in violation of state and federal law as a direct result of his disabilities and the manifestations of those disabilities.

120.     As a direct and proximate result of Defendants' acts and omissions N.S. has suffered and will continue to suffer from serious physical injuries, pain and suffering, emotional distress, and functional impairment which has, and will permanently, substantially reduce the quality of his life.

**WHEREFORE**, the Plaintiffs respectfully request this Court enter judgment in their favor and against each of the Defendants, and award them all relief allowed by law, including but not limited to, their compensatory, consequential, and special damages in an amount to be proven at trial, appropriate relief at law and equity, economic and non-economic losses, punitive damages to be determined at trial, attorney's fees and costs associated with this action, pre and post judgment interest at the highest lawful rate, and for such other and further relief as allowed by law.

## SIXTH CAUSE OF ACTION

### Violation of Title II of the ADA

### (Against All Defendants)

121.     Plaintiffs incorporate all allegations set forth above as if more fully set forth herein.

122.     Title II of the ADA, 42 U.S.C. § 12131 et seq. and the regulations thereunder, 28 C.F.R. Part 35, governing state and local governmental entities, protects persons from discrimination on the basis of disability by public entities. The ADA prohibits the exclusion from participation in, or being denied the benefits of the services, programs, or activities of the public entity, or being subjected to discrimination by such entity.

123.    At all times material hereto, N.S. was an individual with a disability within the meaning of the ADA.

124.    By reason of his disability, N.S. was excluded from the participation in and denied benefits of the services, programs, and activities of the WPSBC.

125.    By reason of his disability, N.S. was subject to discrimination by Defendants.

126.    The above-described conduct of the Defendants violated N.S.'s rights under the ADA and the regulations promulgated thereunder by denying N.S. the benefits of the services, programs, and activities to which he was otherwise entitled from the School District. N.S. was grossly mistreated in violation of state and federal law as a direct result of his disabilities and the manifestations of those disabilities.

127.    As a direct and proximate result of Defendants' acts and omissions N.S. has suffered and will continue to suffer from serious physical injuries, pain and suffering, emotional distress, and functional impairment which has, and will permanently, substantially reduce the quality of his life.

**WHEREFORE**, the Plaintiffs respectfully request this Court enter judgment in their favor and against each of the Defendants, and award them all relief allowed by law, including but not limited to, their compensatory, consequential, and special damages in an amount to be proven at trial, appropriate relief at law and equity, economic and non-economic losses, punitive damages to be determined at trial, attorney's fees and costs associated with this action, pre and post judgment interest at the highest lawful rate, and for such other and further relief as allowed by law.


## SEVENTH CAUSE OF ACTION

### Violation of the Federal Bill of Rights for the Developmentally Disabled.

**(Against All Defendants)**

128.     Plaintiffs incorporate all allegations set forth above as if more fully set forth herein.

129.     Individuals with developmental disabilities are guaranteed the right to appropriate treatment, services and habilitation for such disabilities consistent with the Developmental Disabilities Assistance and Bill of Rights Act ("DDABR").

130.     Under the DDABR, individuals with developmental disabilities are guaranteed the right to services that are free of abuse and are free of violations of legal and human rights.

131.     Under the DDABR, the use of physical restraint and seclusion in publicly funded educational programs is prohibited "unless absolutely necessary to ensure the immediate physical safety of the individual or others..."

132.     Under the DDABR, the use of physical restraint and seclusion "as a punishment or as a substitute for a habilitation program" is prohibited in publicly funded educational programs.

133.     The above-described conduct of the Defendants violated N.S.'s rights under the DDABR and the regulations promulgated thereunder. N.S. was abused, his legal and human rights were violated, he was physically restrained and secluded without proper basis, and he was restrained and secluded as both a punishment and for habilitation purposes.

134.     As a direct and proximate result of Defendants' acts and omissions N.S. has suffered and will continue to suffer from serious and permanent physical injuries, pain and suffering, emotional distress, and functional impairment which has, and will, substantially reduce the quality of his life.

**WHEREFORE**, the Plaintiffs respectfully request this Court enter judgment in their favor and against each of the Defendants, and award them all relief allowed by law, including but not limited to, their compensatory, consequential, and special damages in an amount to be proven at trial, appropriate relief at law and equity, economic and non-economic losses, punitive damages to be determined at trial, attorney's fees and costs associated with this action, pre and post judgment interest at the highest lawful rate, and for such other and further relief as allowed by law.

## EIGHTH CAUSE OF ACTION

### Negligence

### (Against All Defendants)

135.     Plaintiffs incorporate all allegations set forth above as if more fully set forth herein.

136.     The WBSBC, claiming to cater to special needs and visually impaired individuals, owed N.S., a special needs student, duties of special or ordinary care. The WBSBC and Defendants breached their duties of care to N.S. in the following ways:

a.  Inadequate training and oversight;

b.  Inadequate staffing for the needs of their students;

c.  Failing to properly analyze N.S.'s needs;

d.  Recommending inappropriate methods to help combat N.S.'s behavior;

e.  Inadequate remedial measures;

f.  Restraining N.S. beyond what was needed to protect himself or others; and

g.  Or otherwise, failing to properly care for and nurture N.S. while he was in their care.

137.    Furthermore, the individually named agents and employees of the WPSBC breached their duties of care to N.S. in the following ways:

a.  Inadequate training and oversight;

b.  Inadequate reporting;

c.  Failing to properly analyze N.S.'s needs;

d.  Physically restraining and physically harming N.S. by acts or omissions;

e.  Recommending inappropriate methods to help combat N.S.'s behavior

f.  Restraining N.S. beyond what was needed to protect himself or others; and

g.  Or otherwise, failing to properly care for and nurture N.S. while he was in their care.

138.    As a direct and proximate result of the Defendants' acts and omissions N.S. has suffered and will continue to suffer from serious physical injuries, pain and suffering, emotional distress, and functional impairment which has, and will permanently, substantially reduce the quality of his life.

**WHEREFORE**, the Plaintiffs respectfully request this Court enter judgment in their favor and against each of the Defendants, and award them all relief allowed by law, including but not limited to, their compensatory, consequential, and special damages in an amount to be proven at trial, appropriate relief at law and equity, economic and non-economic losses, punitive damages to be determined at trial, attorney's fees and costs associated with this action, pre and post judgment interest at the highest lawful rate, and for such other and further relief as allowed by law.

## NINTH CAUSE OF ACTION

## Assault

**(Against Individually Named Defendants)**

139.     Plaintiffs incorporate all allegations set forth above as if more fully set forth herein.

140.     Defendants intended to make physical contact with N.S.

141.     Defendants placed N.S. in apprehension of immediate harmful and offensive physical contact.

142.     By the repeated use of physical and mechanical restraints against N.S.'s person, as described in more detail above, Defendants assaulted N.S.

143.     As a direct and proximate result of the Defendants' acts and omissions N.S. has suffered and will continue to suffer from serious physical injuries, pain and suffering, emotional distress, and functional impairment which has, and will permanently, substantially reduce the quality of his life.

**WHEREFORE**, the Plaintiffs respectfully request this Court enter judgment in their favor and against each of the Defendants, and award them all relief allowed by law, including but not limited to, their compensatory, consequential, and special damages in an amount to be proven at trial, appropriate relief at law and equity, economic and non-economic losses, punitive damages to be determined at trial, attorney's fees and costs associated with this action, pre and post judgment interest at the highest lawful rate, and for such other and further relief as allowed by law.

## TENTH CAUSE OF ACTION

### Battery

**(Against Individually Named Defendants)**

144.     Plaintiffs incorporate all allegations set forth above as if more fully set forth herein.

145.    Defendants' acts, as described in detail above, resulted in harmful and offensive physical contact with N.S.

146.    Defendants intended to make physical contact with N.S.

147.    As a direct and proximate result of the Defendants' acts and omissions N.S. has suffered and will continue to suffer from serious physical injuries, pain and suffering, emotional distress, and functional impairment which has, and will permanently, substantially reduce the quality of his life.

**WHEREFORE**, the Plaintiffs respectfully request this Court enter judgment in their favor and against each of the Defendants, and award them all relief allowed by law, including but not limited to, their compensatory, consequential, and special damages in an amount to be proven at trial, appropriate relief at law and equity, economic and non-economic losses, punitive damages to be determined at trial, attorney's fees and costs associated with this action, pre and post judgment interest at the highest lawful rate, and for such other and further relief as allowed by law.

## ELEVENTH CAUSE OF ACTION

### Defamation

### (Against All Defendants)

148.    The Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

149.    The CYS Report contains several false and defamatory statements about Mrs. Smedberg including but not limited to allegations such as:

   a.   N.S. was made to sleep with gloves on;

   b.   N.S. was made to sleep in a helmet and splints;

   c.   The home has no resources for N.S.;

      d.   The school recommended against the helmet and gloves;

      e.   Egregious failure to supervise N.S.; and

      f.   Serious physical neglect of N.S.

150.      The report is false and defamatory on its face imputing serious and egregious statements the WPSBC's agents and employees knew were false.

151.      The Defendant willingly and with malice made such false statements. The WPSBC directly advised the Smedbergs to use gloves and a helmet to help curb N.S.'s behavior and prevent serious injury. The WPSBC also understood the Smedbergs situation and reiterated to Mrs. Smedberg multiple times, that they did not suspect child abuse. However, they went on to report it, including this false information, directly exhibiting actual malice.

152.      Mr. and Mrs. Smedberg never required N.S. to sleep in a helmet, splits, or gloves. N.S. is directly supervised by the Smedbergs; he is under constant care and attention.

153.      These statements were made to CYS and published in a report. The CYS Department as well as their affiliates read the report and conducted an investigation surrounding the false statements. The CYS caseworker also expressed these statements were false and inaccurate and terminated any case.

154.      As a proximate result of the above-described publication, the Plaintiffs have suffered loss of their reputation, shame, mortification, and emotional distress.

**WHEREFORE**, the Plaintiffs respectfully request this Court enter judgment in their favor and against each of the Defendants, and award them all relief allowed by law, including but not limited to, their compensatory, consequential, and special damages in an amount to be proven at trial, appropriate relief at law and equity, economic and non-economic losses, punitive damages to be

determined at trial, attorney's fees and costs associated with this action, pre and post judgment interest at the highest lawful rate, and for such other and further relief as allowed by law.

## TWELFTH CAUSE OF ACTION

### Intentional or Negligent Infliction of Emotional Distress

### (Against All Defendants)

155.     Plaintiffs incorporate all allegations set forth above as if more fully set forth herein.

156.     The conduct of the Defendants placing N.S., pre-k child with a disability, who is unable to communicate effectively, into restraints for elongated periods of time was extreme and outrageous.

157.     The Defendant's conduct was intentional or reckless.

158.     Defendants' negligence created an unreasonable risk of physical harm to N.S..

159.     Defendants' intentional or reckless conduct caused N.S. to be put in fear for his own safety and such fear was shown by psychological and emotional injuries.

160.     The Defendant's conduct caused N.S. to suffer severe emotional distress including but not limited to, anxiety in which he is medicated for, severe attachment issues, inability to regulate his emotions, and inability to sleep.

161.     As a direct and proximate result of the Defendants' acts and omissions N.S. has suffered and will continue to suffer from serious physical injuries, pain and suffering, emotional distress, and functional impairment which has, and will permanently, substantially reduce the quality of his life.

**WHEREFORE**, the Plaintiffs respectfully request this Court enter judgment in their favor and against each of the Defendants, and award them all relief allowed by law, including but not limited to, their compensatory, consequential, and special damages in an amount to be proven at trial, appropriate relief at law and equity, economic and non-economic losses, punitive damages to be determined at trial, attorney's fees and costs associated with this action, pre and post judgment interest at the highest lawful rate, and for such other and further relief as allowed by law.

## V.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against each of the Defendants, and award them all relief allowed by law, including but not limited to the following:

1. For all of Plaintiffs' compensatory, consequential and special damages in an amount to be proven at trial;

2. Appropriate relief at law and equity;

3. Economic and non-economic losses on all claims allowed by law;

4. Punitive damages on all claims allowed by law and in an amount to be determined at trial;

5. Attorney's fees and costs associated with this action, including expert witness fees;

6. For pre and post judgment interest at the highest lawful rate;

7. For a trial by jury on all issues so triable; and

8. For such other and further relief as allowed by law.

Respectfully Submitted:

*/s/ Monte J. Rabner*
Monte J. Rabner, Esquire
222 Boulevard of the Allies
Floor 2
Pittsburgh, PA 15222