**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| N.S., *a minor*, KELLIE SMEDBERG, *individually and together as Husband and Wife,* MARK SMEDBERG, *individually and together as husband and wife*, | ) ) ) ) | Civil Action No. 2:24-cv-0219-MPK Magistrate Judge Maureen P. Kelly |
| | ) | |
| Plaintiffs, | ) | Re: ECF Nos. 13, 15, 17, 19, 21, and 23 |
| | ) | |
| v. | ) | |
| | ) | |
| WESTERN PENNSYLVANIA SCHOOL FOR BLIND CHILDREN, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>[1]

Pending before the Court are Motions to Dismiss filed on behalf of Defendant Western Pennsylvania School for Blind Children ("WPSBC") and five of its administrators and employees (collectively, "Defendants"). ECF Nos. 13, 15, 17, 19, 21, and 23. For the following reasons, the Motions to Dismiss are granted in part and denied in part.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

The following statements are taken from the Complaint unless otherwise noted. N.S. is six years old and suffers multiple behavioral and medical diagnoses, including autism spectrum disorder with language impairment, global development delay, and cortical vision impairment. ECF No. 1 ¶¶ 1, 2. He has trouble communicating and requires full time care and attention for his daily living needs. Id. ¶ 3. Because of his disabilities, N.S. is eligible for special education services

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including trial and entry of final judgment, with direct review by the United States Court of Appeals for the Third Circuit.   ECF Nos. 48 and 49.

and supports pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401 *et seq*. Id. ¶ 17.

In 2021, N.S.'s parents, Kelly and Mark Smedberg, met with representatives of WPSBC to discuss N.S.'s needs and to develop an education plan. Id. The Smedbergs were told that once N.S. enrolled, his "team" would meet with them weekly. His team included Defendants Lisa Reale ("Reale") who serves as WPSBC principal, N.S.'s teacher Megan Simmen ("Simmen"), N.S.'s case manager Erin Kelly ("Kelly"), and WPSBC school nurse Colleen Benton ("Benton"). Defendant Heidi Odnek ("Odnek") serves as the WPSBC Superintendent, and in that capacity is not identified as a member of N.S.'s team. Id. ¶¶ 6-10.¶ 18. N.S. enrolled at WPSBC in October 2021 and was provided therapeutic services including physical therapy, speech therapy, vision therapy, and occupational therapy. Id. ¶ 21.

In March 2022, N.S.'s parents noticed a bite mark on his arm. Staff at the school could not say whether he was bitten by a classmate. Id. ¶ 22. In the following weeks, N.S. displayed self-injurious behavior at home and at school. This behavior included hitting and punching himself and banging his head on the floor. Id. ¶¶ 23-24. On April 1, 2022, N.S.'s team met without his parents to discuss the changes in his behavior. During the meeting, the team discussed the possibility of providing N.S. a helmet to curb self-injury. Id. ¶ 25. A behavioral specialist at the meeting suggested waiting to document N.S.'s behavior before providing the helmet. Id.

On April 11, 2022, Simmen spoke with Mrs. Smedberg to discuss N.S.'s concerning behavior and her recommendation for helmet use to avoid further injury. Simmen also recommended "autistic gloves." Id. ¶ 26. Mrs. Smedberg expressed concerns about gloves that could restrict movement and offered that she had "jui jitsu" gloves. Simmen agreed that the alternative gloves would suffice and told Mrs. Smedberg that she would "find a helmet." Id. ¶ 27.

2

During Easter break, N.S. did not suffer any instances of self-harm, but relapsed upon his return to school. Over the following weeks, N.S. returned home with bruising, and began to display severe separation anxiety that manifested in tantrums before getting on the school bus. He also suffered a decline in social skills. Id. ¶¶ 28-29.

The Smedbergs used the helmet and gloves at home "a few times," but then told Simmen not to use the gloves at school because Mrs. Smedberg was concerned the gloves were causing irritation to N.S.'s wrists. Id.  ¶ 30. On May 10, 2022, Simmen expressed concerns related to the level of care and attention N.S. required. Id. ¶ 31. That same day, Nurse Benton and Caseworker Kelly called Mrs. Smedberg to express that N.S. may have a neurological issue based on his inconsolable behavior at school. Mrs. Smedberg told them he was not having behavior issues at home and did not display any issues before attending WPSBC. Id. ¶ 32. Benton and Kelly then told Mrs. Smedberg that they were filing a report with CYS but also stated that they did not suspect any child abuse. Benton and Kelly stated that they "had no choice because of the helmet and gloves," although both measures were recommended and implemented by WPSBC. Id. ¶ 33. Benton and Kelly also told Mr. and Mrs. Smedberg that a parent report of suspected abuse against WPSBC would be deemed "retaliation." Id. ¶ 34. That evening, N.S. returned home without the helmet.

On May 11, 2022, a CYS caseworker contacted Mrs. Smedberg to conduct an interview. She arrived at the Smedberg home and stated that there were serious accusations of physical neglect and failure to supervise N.S., including restraining N.S., and requiring him to sleep in a helmet and gloves. Id. ¶ 38. During the visit, the caseworker "was aware that there was no child abuse, just a concerned family that cared greatly for [their son]." Id. ¶ 39. The Smedbergs explained to the caseworker that WPSBC was responsible for the helmet. Id. The next day, N.S. was seen by

his vision specialist, who commented on the change in N.S.'s behavior. A second CYS interview took place on May 13, 2022, and resulted in a finding that no abuse was occurring. Id. ¶ 42.

On June 7, 2022, the Smedbergs informed WPSBC that they would be disenrolling their son. Id. ¶ 44. On June 14, 2022, the Smedbergs met with Principal Reale, "who apologized profusely …. [and]  agreed that it was clear there was no abuse." Id. ¶ 45 (emphasis omitted). Reale stated that Kelly and Benton's reports "were incorrect and inaccurately represented the situation." Id. ¶ 46. The Smedbergs construe this statement as an admission that Kelly and Benton "falsified multiple reports." Id. ¶ 46.

The Smedbergs allege "upon information and belief" that WPSBC staff "used multiple retraining (sic) devices improperly" that were not noted in N.S. education plan "such as belting N.S. to a chair for irregular amounts of time, keeping a helmet on N.S.'s head, keeping N.S.'s hands enclosed, or otherwise." Id. ¶ 47. The Smedbergs assert, also based on belief, that the mechanical restraints included "a restraint chair," that was used with the helmet and gloves in lieu of an appropriate behavior modification plan, occupational therapy, or "assistive technology evaluations." Id. ¶¶ 49-51. The Smedbergs allege "upon information and belief" that WPSBC used the restraint chair routinely to discipline N.S. and to gain control and behavioral compliance without resort to de-escalation techniques, and that staff failed to document each instance restraints were employed. Id. ¶¶ 52-57.   As a result, the Smedbergs allege that N.S. has suffered severe anxiety, behavioral and cognitive declines, and regression in skills such as independent play and potty training. Id. ¶¶ 58-62.

On February 20, 2024, the Smedbergs commenced this action and assert the following claims against the identified Defendants.

| Count I | Fourth Amendment – unlawful seizure and restraint, excessive force | All Defendants (in official and individual capacities) |
|---------|-----|-----|
| Count II | § 1983 Supervisory Liability, Failure to Train, Failure to Supervise related to unlawful use of restraints | WPBSC, Ondek, Reale (official and individual capacities) |
| Count III | Violation of IDEA – unlawful use of restraints | All Defendants |
| Count IV | Violation of Pa. Code § 711.46 and 55 Pa. Code § 3800.210 | All Defendants |
| Count V | Violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 | All Defendants |
| Count VI | Title II of the Americans with Disabilities Act, 42 U.S.C. § 42 U.S.C. § 12131 *et seq*. | All Defendants |
| Count VII | Federal Bill of Rights for the Developmentally Disabled[2] | All Defendants |
| Count VIII | Negligence (state law) | All Defendants |
| Count IX | Assault (state law) | All individually named Defendants |
| Count X | Battery (state law) | All individually named Defendants |
| Count XI | Defamation (state law) | All Defendants |
| Count XII | Intentional or Negligent Infliction of Emotional Distress (state law) | All Defendants |

ECF No. 1 at 12-31. The Smedbergs state they do not seek remedial measures available through the IDEA's administrative dispute resolution process. Instead, they seek compensatory and punitive damages, attorney's fees and costs, and equitable relief.

In response to the Complaint, Defendants filed the pending Motions to Dismiss on behalf of each Defendant with briefs in support of each motion. ECF Nos. 13-24. The Smedbergs responded with Briefs in Opposition to each motion. ECF Nos. 27-32. Defendants filed Reply briefs. ECF Nos. 33-38. The Motions to Dismiss are ripe for consideration.

---

[2] The Court interprets this as a reference to The Developmental Disabilities Assistance and Bill of Rights Act of 2000, PL 106–402, October 30, 2000, 114 Stat 1677.

## II.   STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). The complaint must "state a claim to relief that is plausible on its face" by providing facts which "permit the court to infer more than the mere possibility of misconduct…," Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009), and "raise a right to relief above the speculative level," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In assessing the plaintiff's claims, "the Court must accept all non-conclusory allegations in the complaint as true, and the non-moving party 'must be given the benefit of every favorable inference.'" Mergl v. Wallace, No. 2:21-CV-1335, 2022 WL 4591394, at *3 (W.D. Pa. Sept. 30, 2022) (quoting Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) and Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992)). "However, the Court 'disregard[s] threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements.'" Mergl, 2022 WL 4591394, at *3 (quoting City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp., 908 F.3d 872, 878–79 (3d Cir. 2018) and James v. City of Wilkes-Barre, 700 F.3d 675, 681 (3d Cir. 2012)).

## III.   DISCUSSION

### A.  Section 1983 Claims - State Actors

Section 1983 creates liability to the injured party for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by persons acting under color of state law. 42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393–94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and

laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).

At Count I, the Smedbergs assert that WPSBC and the individual Defendants violated N.S.'s rights under the Fourth Amendment to the Constitution. At Count II, the Smedbergs allege supervisory liability claims against WPBSC, Ondek, and Reale for the violation of those rights by WPBSC employees.

Defendants move to dismiss each claim because, among other reasons, none are state actors against whom a Section 1983 claim may be asserted. ECF No. 24 at 4-6.  Defendants contend that the allegations related to WPSBC's status are insufficient to state a Section 1983 claim. As pleaded, WPSBC "is a private chartered school" that "receives federal funding," is a "nonprofit organization[,] and exempt from income tax." ECF No. 1 ¶ 5. Defendants assert that none of these factors subjects WPSBC or its employees to liability under Section 1983.

The Smedbergs respond that WPSBC is a "charter" school subject to Pennsylvania's Charter School Law ("CSL") and, as provided by the CSL, "can '[s]ue and be sued, but only to the same extent and upon the same condition that political subdivisions and local agencies can be sued." ECF No. 27 at 5 (citing 24 P.S. 17-1714-A(a)(2)). Thus, the Smedbergs contend that Defendants are statutorily recognized as state actors and subject to Section 1983 liability. But the Smedbergs are wrong.

The Smedbergs acknowledge that under the CSL, a "charter school" is "*an independent public school* established and operated under a charter from the local board of school directors and in which students are enrolled or attend." <u>See</u> 24 Pa. Cons. Stat. § 17-1703-A (emphasis added). The Complaint does not set forth any facts that plausibly establish that a local board of school directors granted WPSBC a charter or that WPSBC is a "public school." Instead, as alleged in the

7

Complaint, WPSBC is a *private* institution recognized by Pennsylvania law as a "*chartered*" school that receives funding for the education of blind children in accordance with tuition cost-sharing and audit provisions set forth in 24 Pa. Cons. Stat. § 13-1376.1(a)-(g). Those provisions do not alter the private nature of the school. Thus, the cases cited by the Smedbergs related to the status of charter schools as state actors do not apply. See Irene B. v. Philadelphia Acad. Charter Sch., No. 02-1716, 2003 WL 24052009 (E.D. Pa. 2003) (under 24 Pa. Cons. Stat. § 17-1703-A, defendant charter school is part of public school system authorized to effectuate its duties and thus is a state actor in the context of claims brought against it under the § 1983); Zager v. Chester Cmty. Charter Sch., 934 A.2d 1227, 1231-32 (Pa. 2007) (CSL defines a charter school as "an independent public school…." and performs a distinct obligation of the state).

The Smedbergs' reliance on public funding is also insufficient. ECF No. 27 at 6. As "made plain" by the United States Court of Appeals for the Third Circuit, "public funding alone is not enough" to support a claim that a defendant is a state actor. MDB v. Punxsutawney Christian Sch., 386 F. Supp. 3d 565, 585 (W.D. Pa. 2019) (citing Robert S. v. Stetson Sch. Inc., 256 F.3d 159, 164-66 (3d Cir. 2001)); see also Rendell-Baker v. Kohn, 457 U.S. 830, 840 (1982) (holding that public funding was insufficient to make the conduct of a private school for high school students who have "experienced difficulty completing public high schools" "acts of the State").

The Smedbergs argue that along with public funding, WPSBC must abide by regulations promulgated by the State Board of Education, which "underscores WPSBC's status as a state actor operating under the color of state law for the purposes of Section 1983." ECF No. 27 at 6. This fact is not alleged in the Complaint and, if it were, regulation of a private entity "even if 'extensive

and detailed' [does] not make a [private entity's] actions state action." <u>Rendell-Baker</u>, 457 U.S. at 841.[3]

"[T]here are some circumstances in which there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." <u>MDB v. Punxsutawney</u>, 386 F. Supp. 3d at 585 (quoting <u>Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n</u>, 531 U.S. 288, 295 (2001) (in turn quoting <u>Jackson v. Metro. Edison Co.</u>, 419 U.S. 345, 349 (1974) (internal quotation marks omitted)).

> The Third Circuit has "outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists," which are as follows:
>
>> (1)"[W]hether the private entity has exercised powers that are traditionally the exclusive prerogative of the state"; (2) "whether the private party has acted with the help of or in concert with state officials"; and (3) whether "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity."
>
> <u>Kach v. Hose</u>, 589 F.3d 626, 646 (3d Cir. 2009) (quoting <u>Mark v. Borough of Hatboro</u>, 51 F.3d 1137, 1142 (3d Cir. 1995)). In deciding whether state action has occurred, the central purpose of the inquiry is to "assure that constitutional standards are invoked when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." <u>Brentwood</u>, 531 U.S. at 295, 121 S.Ct. 924 (citation omitted).

<u>Punxsutawney</u>, 386 F. Supp. 3d at 585. But the Smedbergs have not alleged any facts to support an inference that WPSBC or its employees and administrators are state actors under these tests.[4]

---

[3] In addition to any regulations cited by the Smedbergs, Pennsylvania law grants the Commonwealth a right to "investigate and examine" WPSBC "buildings, grounds, equipment, affairs and accounts" of the school to determine indebtedness and to determine whether any liens or claims may be of record against the school, and whether the school is in "good repair." 24 P.S. § 2605. The ability to inspect or examine financial records is not the substantial or direct control sufficient to infer that there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." <u>Leshko v. Servis</u>, 423 F.3d 337, 339 (3d Cir. 2005).

[4] The facts alleged by the Smedbergs contrast with those set forth in the pleadings in <u>Rossillio v. Overbrook Sch. for the Blind</u>, No. 16-1649, 2016 WL 4076689 (E.D. Pa. Jul. 29, 2016). There, the Court found that the plaintiff adequately pleaded that the chartered school acted under color of state law based on the allegation that the Governor of Pennsylvania "is or was a statutorily authorized member of its Board of Trustees." <u>Id.</u> at *2. Those allegations do not

See also M.J.G. v. Sch. Dist. of Philadelphia, 774 F. App'x 736, 741-42 (3d Cir. 2019) (reiterating criteria and concluding at summary judgment stage that contractor paid by state to provide behavior health services for special education students was not a state actor). Thus, the Motion to Dismiss Counts I and II against all Defendants is granted for failure to state a claim for relief.

### B.  Personal Involvement

Defendants move in sweeping terms to dismiss the Complaint because the Smedbergs fail to allege facts to support the personal involvement of each Defendant in the claims asserted. See, e.g., ECF No. 14 at 6-8 (Benton); ECF No. 16 at 204 (Kelly); ECF No. 18 at 7 (Reale); ECF No. 20 at 3-4 (Simmen); ECF No. 22 at 6, 12, 15 (Ondek). However, at this stage of the litigation, all a plaintiff needs to allege are sufficient facts to place a defendant on notice of the nature and the basis of the claims against him. See Fed. R. Civ. P. 8. The Complaint does that.

The allegations specify a location, a short period of a few weeks that restraints allegedly were inappropriately employed to control N.S.'s behavior, and each Defendant's membership on the "team" or in school administration who participated in the decision to restrain N.S. Personal involvement can be revisited at summary judgment, when the Smedbergs must present evidence establishing the conduct on which each claim against each Defendant is based. See Jutrowski v. Twp. Of Riverdale, 904 F.3d 280, 285 (3d Cir. 2018) ("a plaintiff alleging that one or more officers engaged in unconstitutional conduct must establish the 'personal involvement' of each named defendant to survive summary judgment and take that defendant to trial."). But at this stage of the litigation, unless otherwise noted below (as with the claim for defamation), the Smedbergs state the personal involvement of each Defendant in the claims asserted. Thus, the Motions to Dismiss based on personal involvement are denied.

---

appear in the Smedbergs' Complaint, and under Fed. R. Civ. P. 11, if alleged in any amended complaint, must be supported by "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances."

### C. Count III - IDEA

At Count III, the Smedbergs bring a claim under IDEA because WPSBC allegedly "failed to comply with the procedures set forth in the IDEA," and "failed to provide N.S. an appropriate education as required under the IDEA." ECF No. 1 ¶¶ 96, 97-100. The Smedbergs assert that WPSBC failed to convene an Individualized Education Program ("IEP") meeting following any incident when restraint was used; failed to train its personnel in the use of positive behavior interventions and supports to address N.S.'s behaviors; and failed to provide notification and participation for N.S.'s parents in the decisions impacting his access to education or before changing his IEP. The Smedbergs request compensatory and punitive damages, as well as "appropriate relief at law and equity, … attorney's fees and costs, … and for such other and further relief as allowed by law." Id. at 19. In bringing their various claims, they "do not seek relief that is also available through the IDEA's administrative dispute resolution procedures." Id. ¶ 64.

Defendants do not address whether the IDEA applies to WPSBC as a private school.[5] Instead, Defendants seek dismissal of the Smedbergs' IDEA claims for failure to exhaust

---

[5] The Court's disposition of this action is constrained by the arguments the parties present. However, it is well-settled that responsibility for the development and implementation of an IEP lies not with a private school, but with a school district or local educational agency. See e.g., Derrick Through Tina v. Glen Mills Sch., No. CV 19-1541, 2019 WL 7019633, at *16 (E.D. Pa. Dec. 19, 2019). Thus, a claim for the violation of the IDEA cannot be stated against a private school but is properly pursued against the applicable school district or local educational agency.

> Although under the IDEA children with disabilities may be placed in a private school or facility as a means of providing special education and related services, ultimate responsibility for the appropriate provision of such services remains with the state or local education agency. See 20 U.S.C. § 1412(a)(10)(B)(i); 34 C.F.R. §§ 300.146-300.147. For purposes of the IDEA, Glen Mills is not a state or local educational agency but rather a private school that cannot be held liable. See Bardelli v. Allied Servs. Inst. of Rehab. Med., No. 14-0691, 2015 WL 999115, at *5-6 (M.D. Pa. Mar. 6, 2015); J . v. Sch. Dist. of Phila., No. 06-3866, 2007 WL 1221216, at *2-4 (E.D. Pa. Apr. 25, 2007). Thus, plaintiffs' claims against Glen Mills under the Fourteenth Amendment, Pennsylvania state law, the ADA, and Section 504 of the Rehabilitation Act do not seek relief that is otherwise available under the IDEA. These claims against Glen Mills therefore are not subject to the IDEA's exhaustion requirement. See 20 U.S.C. § 1415(l).

administrative remedies through the IDEA's mandatory dispute resolution process. ECF No. 24 at 16. The Smedbergs do not dispute that they failed to pursue available administrative remedies but contend that exhaustion is not required because they seek monetary damages that are unavailable under the IDEA. ECF No. 27 at 13. Therefore, they assert that exhaustion would be futile and their failure to exhaust administrative remedies is excused. Id.

The IDEA requires participating states, including Pennsylvania, to provide a "free appropriate public education" ("FAPE") to children who have special needs. 20 U.S.C. § 1412(a)(1). A FAPE "comprises 'special education and related services' – both 'instruction' tailored to meet a child's 'unique needs' and sufficient 'supportive services' to permit the child to benefit from that instruction. Fry v. Napoleon Cmty. Sch., 580 U.S. 154, 158 (2017) (citing inter alia 20 U.S.C. §§ 1401(9), (26) (29)). Participating states "must comply with detailed procedures for identifying, evaluating, and making placements for students with disabilities, as well as procedures for developing an IEP." Batchelor v. Rose Tree Media Sch. Dist., 759 F.3d 266, 271-72 (3d Cir. 2014). An IEP is "[c]rafted by a child's 'IEP Team' – a group of school officials, teachers and parents," and "spells out a personalized plan to meet all of the child's educational needs.'" Fry, 580 U.S. at 158 (citations omitted). The IEP serves to document several items, and "lists the 'special education and related services' to be provided to that [the child] can 'advance appropriately toward [those] goals." Id.

"Because parents and school representatives sometimes cannot agree on such issues, the IDEA establishes formal procedures for resolving disputes." Id. This includes "specified procedural safeguards to ensure children with disabilities and their parents are provided with due process." Batchelor, 759 F.3d at 272. As relevant here, these safeguards permit parents to file a due process complaint with Pennsylvania's Office of Dispute Resolution regarding "any matter

relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." Id., 20 U.S.C. § 1415(b)(6). The due process complaint triggers an administrative process that includes a preliminary meeting, a mediation process, and if unsuccessful, a "due process hearing" before an impartial hearing officer. Fry, 580 at 159. "A parent unhappy with the outcome of the administrative process may seek judicial review by filing a civil action in state or federal court." Id. (citing 20 U.S.C. § 1415(1)(2)(A)). However, "a plaintiff who seeks relief available under the IDEA must exhaust his administrative remedies before filing a lawsuit, even if he relies on laws other than the IDEA." Wellman v. Butler Area Sch. Dist., 877 F.3d 125, 131 (3d Cir. 2017); 20 U.S.C. § 1415(l); see also Trenton Pub. Sch. Dist. Bd. of Educ. v. Found. Acad. Charter Sch., No. 23-2924, 2024 WL 3579603, at *2 (3d Cir. July 30, 2024) ("In the normal case, exhausting the IDEA's administrative process is required in order for the statute to grant subject matter jurisdiction to the district court.") (citing J.M. v. Summit City Bd. of Educ., 39 F.4th 126, 139 (3d Cir. 2022) (quoting Batchelor v. Rose Tree Media Sch. Dist., 759 F.3d 266, 272 (3d Cir. 2014)). "However, exhaustion is not required where it would be 'futile or inadequate, where the question presented is purely legal, where the administrative process cannot grant relief, or where exhaustion would work a severe or irreparable harm upon a litigant.'" Id. (quoting D.M. v. N.J. Dep't of Educ., 801 F.3d 205, 212 (3d Cir. 2015)).

The Smedbergs contend that the futility exception saves their IDEA claim because they seek monetary damages. After all, "everyone agrees [the] IDEA does not provide" compensatory damages. Luna Perez v. Sturgis Pub. Schools, 598 U.S. 142, 148 (2023). See also Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ., 587 F.3d 176, 185-86 (3d Cir. 2009). But as recognized in Chambers, the plain language and structure of the IDEA does not "create a mechanism for compensating disabled children and their families for their pain and suffering

where a FAPE is not provided." Id. Thus, where monetary damages are sought for past conduct under the IDEA, the "claim fails as a matter of law." Id.

Further, to the extent that the IDEA applies to the WPSBC, the Smedbergs request for attorney fees, equitable, and other non-monetary relief including "evaluation costs, and other such related costs," are not exempt from IDEA's exhaustion requirement. ECF No. 27 at 18. Thus, if the IDEA applies, the Smedbergs' equitable claims and claims for attorney fees under the IDEA are presently barred because they failed to exhaust the administrative review process. Id. at 19; LePape v. Lower Merion Sch. Dist., 103 F.4th 966, 980 n.11 (3d Cir. 2024) ("a request for attorney fees is a request for relief available under the IDEA" and is subject to the exhaustion requirement in 20 U.S.C. § 1415(l)). Because the Smedbergs cannot recover compensatory damages and failed to pursue other available relief available through the IDEA administrative process, the Motion to Dismiss Count III is granted, and the Smedbergs' IDEA claim is dismissed.[6]

### D. Counts IV and VII – State Regulations and Developmentally Disabled Assistance and Bill of Rights Act of 1975

At Count IV, the Smedbergs allege the violation of N.S.'s rights under 22 Pa. Code § 711.46 (imposing procedures and guidelines for the use of mechanical restraints to control acute or episodic self-injurious behavior) and 55 Pa. Code § 3800.210 (prohibiting the use of a mechanical restraints in child residential and day treatment facilities). The Smedbergs also bring a claim at Count VII for the alleged violation of the "Federal Bill of Rights for Developmentally

---

[6] To the extent that the Smedbergs assert that the IDEA applies, their claims for equitable relief and attorney fees under the Rehabilitation Act and ADA must be deferred or are barred at this time by their failure to exhaust the IDEA administrative process. Perez, 598 U.S. at 150 ("a plaintiff who files an ADA action seeking both damages and the sort of equitable relief IDEA provides may find his request for equitable relief barred or deferred if he has yet to exhaust [IDEA's impartial due process hearing and appeal process].").

Disabled," which the Court interprets as a reference to the Developmental Disabilities Assistance and Bill of Rights Act of 2000, 42 U.S.C. § 6010 (the "Act").

Defendants seek to dismiss each of these claims because the cited statute and regulations do not provide a private cause of action. ECF No. 14 at 7, ECF No. 16 at 3, ECF No. 18 at 14, ECF No. 20 at 4, ECF No. 22 at 13, ECF No. 24 at 22. The Smedbergs concede that as to the cited Pennsylvania regulations, no private cause of action is stated and thus the claims against all Defendants at Count IV are dismissed with prejudice. ECF No. 27 at 3.

The Smedbergs also concede that no claim is stated under the Developmentally Disabled Assistance and Bill of Rights Act against any of the Defendants in their individual capacities but oppose dismissal of this claim against the WPSBC and the individual Defendants in their official capacities. Id. However, the United States Supreme Court has held that the "'bill of rights' provision of the [Act] did not create substantive rights in favor of developmentally disabled persons," but merely "express[es] a congressional preference for certain kinds of treatment." Student Coalition for Peace v. Lower Merion Sch. Dist. Bd. of Sch. Dirs., 776 F.2d 431, 440 (3d Cir. 1985) (quoting Pennhurst State Sch. v. Halderman, 451 U.S. 1, 19 (1982)). Thus, the Smedbergs fail to state a claim for relief under the Act in either the individual or official capacities of any individual Defendant or against the WPSCBC, and the claims at Count VII are dismissed with prejudice.

### E.  Counts V and VI – Rehabilitation Act and ADA claims

The Smedbergs allege that Defendants' use of restraint and seclusion practices violated § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Count V), and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (Count VI), because N.S. was denied "the benefits of participation in the services, programs[,] and activities" provided by "public education" or "the

WPSBC" or the unidentified "School District." ECF No. 1 ¶¶ 118, 124, 126. For these violations, the Smedbergs seek compensatory damages, damages for emotional distress, and unspecified equitable relief and attorney fees.[7] Id. at 22, 23.

Like the IDEA, the ADA and Section 504 of the Rehabilitation Act "provide protections for students with disabilities." LePape, 103 F.4th at 978. To that end, Section 504 "assures 'meaningful access' to federally funded programs, Alexander v. Choate, 469 U.S. 287, 301, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985), on the one hand, and the ADA provides for 'full and equal enjoyment' of public accommodations, 42 U.S.C § 12182(a), on the other, to people with disabilities." Berardelli v. Allied Servs. Inst. of Rehab. Med., 900 F.3d 104, 110 (3d Cir. 2018).[8]

Defendants move to dismiss the Smedbergs' ADA and Section 504 claims. First, as related to the individual Defendants, Defendants contend dismissal is properly entered because neither statute provides for individual liability and the claims against them in their official capacities are duplicative of their claims against WPSBC. See, e.g., ECF No. 18 at 13-16. Second, Defendants argue that the Smedbergs do not state a claim for relief because the allegations fail to allege intentional discrimination against N.S. "because of his disability." ECF No. 24 at 11-12. And,

---

[7] As noted earlier, all claims for equitable relief and attorney fees under the ADA and the Rehabilitation Act are barred presently because the Smedbergs failed to exhaust the IDEA administrative review processes, which they assert applies to their claims for non-monetary relief against WPSBC.

[8] At this stage of the litigation, WPSBC does not dispute that it is a recipient of federal funds and thus Section 504 applies to it. ECF No. 1 ¶ 5. As to the ADA claims, the parties have not addressed whether WPSBC is a public entity under Title II or, as a private school, whether Title III governs the Smedbergs' ADA claims. See Adam C. v. Scranton Sch. Dist., No. 3:07-CV-532, 2011 WL 996171, at *3 n.6 (M.D. Pa. Mar. 17, 2011); and see 42 U.S.C. § 12132, providing that pursuant to Title II: "no qualified individual with a disability shall by reason of such disability be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subjected to discrimination by any such entity." To the extent that the Smedbergs' claims may fall under Title III, no monetary damages may be awarded. See e.g., W.M. v. Scranton Sch. Dist., No. 3:21-cv-01266, 2022 WL 4387876, at *6 (M.D. Pa. Sept. 22, 2022) (citing Doe v. Law Sch. Admission Council, Inc., 791 F. App'x 316, 319 (3d Cir. 2019) (in turn, citing 42 U.S.C. §§ 2000a-3(a), 12188(a)(1)). Because the parties do not address this issue, for purposes of the pending motions only, the Court applies Section 504 and Title II of the ADA.

finally, Defendants contend that a claim for relief is not stated under either the Rehabilitation Act or the ADA for punitive damages or for damages for emotional distress.  Id. at 23.

In response to the Motions to Dismiss, the Smedbergs concede that they fail to allege individual liability under either the ADA or Section 504. See ECF No. 27 at 3; see also A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 804 (3 Cir. 2007) ("Suits may be brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals"). However, the Smedbergs argue that they have stated official capacity claims against the individual Defendants despite the duplicative nature of the claims against WPSBC. Id. The Smedbergs also contend that the Complaint sufficiently alleges an ADA claim arising the use of restraints and the failure to "update [N.S.'s] IEP plan to address his needs and … fully report any instances of the restraining to the Smedbergs." Id. at 10. The Smedbergs also claim that under the ADA and Section 504, they are entitled to recover punitive damages and damages for emotional distress. Id. at 18.

The Smedbergs' official capacity claims are properly dismissed as duplicative of their claim against WPSBC. See Snell v. City of York, 564 F.3d 659, 664 (3d Cir. 2009) (quoting Kentucky v. Graham, 473 U.S. 159, 165 (1985)) ("'[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity [,]' since '[i]t is not a suit against the official personally, for the real party in interest is the entity'") (alterations in original). The claims for punitive damages and for emotional distress under Section 504 and the ADA are also dismissed for failure to state a claim for relief. See Cummings v. Premier Rehab Keller, P.L.L.C., 596 U.S. 212, 219-21 (2022) (damages for punitive damages and recovery for emotional distress damages are unavailable under the Rehabilitation Act); Barnes v. Gorman, 536 U.S. 181, 189 (2002) ("because punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civil Rights Act, it follows that they may not be awarded in suits brought under § 202 of the

ADA and § 504 of the Rehabilitation Act); Doherty v. Bice, 101 F.4th 169, 171 (2d Cir. 2024)

(Title II of the ADA expressly limits the remedies recoverable to those set forth in the

Rehabilitation Act; accordingly, because recovery for emotional distress is not recoverable under

Section 504, "such recovery is likewise unavailable under Title II of the ADA").

Turning to the substance of the Section 504 and ADA claims, Defendants argue that the

facts alleged by the Smedbergs are based on speculation and fail to set forth a plausible claim that

WPSBC and its staff intentionally discriminated against N.S. because of his disability. ECF No.

24 at 11-12. The Court declines to dismiss the Complaint on this basis.

> Both § 504 and the ADA prohibit discrimination against individuals with disabilities, and the same standards generally govern claims under both. 29 U.S.C. § 794; 42 U.S.C. § 12132; Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 189 (3d Cir. 2009). In the school context, a plaintiff alleging violations of § 504 and the ADA must show that he "(1) has a disability; (2) was otherwise qualified to participate in a school program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of [his] disability." Chambers, 587 F.3d at 189. Additionally, if a plaintiff seeks compensatory damages for a § 504 or ADA violation, the plaintiff must also show that the discriminatory conduct was intentional. S.H. v. Lower Merion Sch. Dist., 729 F.3d 248, 262 (3d Cir. 2013). In order to establish intentional discrimination, the plaintiff must plead facts showing "at least deliberate indifference." Haberle v. Troxell, 885 F.3d 170, 181 (3d Cir. 2018). To plead deliberate indifference, the plaintiff must allege, first, that the defendant school district had "knowledge that a federally protected right is substantially likely to be violated." S.H., 729 F.3d at 265; Haberle, 885 F.3d at 181. Such knowledge must be actual, as "allegations that one would have or 'should have known' will not satisfy the knowledge prong of deliberate indifference." S.H., 729 F.3d at 266 n.26. Second, the plaintiff must allege that the defendant "fail[ed] to act despite that knowledge." Id. at 265; Haberle, 885 F.3d at 181. The failure to act in the face of the requisite knowledge must be "a deliberate choice, rather than negligence or bureaucratic inaction," but it "does not require a showing of personal ill will or animosity toward the disabled person." S.H., 729 F.3d at 263 (internal quotations omitted).

D.C. v. Pittsburgh Pub. Sch., 415 F. Supp. 3d 636, 657 (W.D. Pa. 2019) (cleaned up).

In A.C. v. Scranton Sch. Dist., 191 F. Supp. 3d 375, 381 (M.D. Pa. 2016), the plaintiffs

alleged that after the school district placed their child at a private school licensed to provide special

education services, he endured the excessive use of physical restraints several times and did not receive appropriate and required care. The district court held that these allegations were sufficient to infer the intentional conduct required to state claims under Section 504 and the ADA against the school district and private school.[9] Similarly, in D.C. v. Pittsburgh, the district court found the plaintiff's ADA and Section 504 claims sufficiently pleaded deliberate indifference because he alleged that the responsible school district knew that he was not receiving appropriate behavior supports, failed to act to correct this harm, and relied on police intervention and inappropriate discipline. Id. at 658. "In other words, D.C. alleges that the District had actual knowledge of D.C.'s disabilities and had ample evidence showing how his disabilities were affecting his access to education. Thus, D.C. pleads sufficient facts to show that the District had actual knowledge that a federally protected right, that is, D.C.'s right to a FAPE, was substantially likely to be violated." Id. While a closer question, the district court found that this inaction was enough to state the deliberate indifference required for claims for compensatory damages under Section 504 and the ADA.

Here, the Smedbergs allege that Defendants were aware of N.S.'s disabilities, witnessed N.S.'s outbursts and incidents of self-harm, and resorted to the forcible use of a restraint chair, as well as a helmet and gloves that prevented him from participating in the services and programs offered by WPSBC. These methods were employed in lieu of available behavioral support intervention and de-escalation techniques. At this early stage of the litigation, the Court finds that the Smedbergs' allegations plausibly state intentional conduct and deliberate indifference to support Section 504 and ADA claims. Cf. D.R. v. Downingtown Area Sch. Dist., No. 23-4907,

---

[9] The district court in A.C. v. Scranton Sch. Dist. did not address whether the claims against the private school arose under Title II or Title III of the ADA, and summarily concluded that the allegations were sufficient to state an ADA claim against both the school district and the private school. 191 F. Supp. 3d at 387-89.

2024 WL 3327939, at *7 (E.D. Pa. July 8, 2024) (deliberate indifference required for ADA and Section 504 claims not stated when restraints in the form of gym mats were briefly used in response self-injurious behavior).

### F. Pendent State Law Claims

#### 1. Local Agency Immunity

The Smedbergs allege state law claims for negligence (Count VIII), assault (Count IX), battery (Count X), defamation (Count XI), and intentional or negligent infliction of emotional distress (Court XII). Defendants assert that each of them has immunity for these claims under Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. C.S.A. § 8541 ("[a]s a chartered school, WPSBC is entitled to immunity pursuant to Pennsylvania's government immunity statute."). ECF No. 24 at 6. Under the PSTCA, liability cannot be imposed on a "local agency" unless the alleged injury arises out of the following acts: (1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; (8) care, custody or control of animals; or (9) sexual abuse. 42 Pa. C.S.A. § 8542(b)(1)-(9).

The Court has determined that WPSBC is not a state actor. See *supra* at 6-9.  If it were – as alleged by the Smedbergs – then all state law tort claims against WPSBC would have to be dismissed because it would be deemed a local agency and no claim falls within an exception to immunity. See e.g., MDB v. Punxsutawney, 386 F. Supp. 3d at 590 (for purposes of pending state claims the district court assumed that private school is not a "local agency" under the PTSCA). But, because WPSBC is not a state actor, Defendants' Motions to Dismiss the pending state law claims are denied on the basis of PSTCA immunity.

### 2.  Count VIII – Negligence

Defendants seek dismissal of the Smedbergs' common-law claims for negligence for failure to allege facts sufficient to state a claim. ECF No. 24 at 17.

The Smedbergs acknowledge that a negligence claim under Pennsylvania law requires: (1) a duty or obligation recognized by the law requiring the defendant to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) defendant's failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; (4) actual loss or damage resulting to the plaintiff. ECF No. 27 at 14. See also Phillips v. Cricket Lighters, 841 A.2d 1000 (Pa. 2003). Having set forth the elements of a negligence claim, the Smedbergs argue that the allegations state a claim for relief and that they "specifically pled Defendants had a duty, as a school claiming to cater to special needs and visually impaired children such as N.S." ECF No. 24 at 14.

However, the Smedbergs allege that WPSBC "is a *private* chartered school." ECF No. 1 ¶ 5 (emphasis added). Under Pennsylvania law, "the relationship between a student and a private school is a contractual one" and therefore may not support a common law negligence claim. MDB v. Punxsutawney, 386 F. Supp. 3d at 591. See also H.B. by & through Patricia F. v. Pittsburgh Pub. Sch., No. 19-1326, 2020 WL 2949367, at *4 (W.D. Pa. May 13, 2020), *report and recommendation adopted*, 2020 WL 2933311 (W.D. Pa. June 2, 2020).

In H.B., the court applied MDB to recommend the dismissal of a negligence claim asserted against The Children's Institute of Pittsburgh, a private school providing special education services on behalf of the Pittsburgh Public School District. The underlying claim involved a sexual assault of a minor child that occurred on a transport van while it was parked next to Children's Institute property. The parents alleged they had lodged complaints with the school related to their child's

personal safety on the van, thus giving rise to a duty to prevent foreseeable harm. The district court concluded that under Pennsylvania law, a negligence claim could not be sustained absent a special duty over and above the contractual obligations of the private school. Absent allegations establishing such a duty, it was required to grant a motion to dismiss the plaintiffs' negligence claim. 2020 WL 2949367, at *4.

Here, as in <u>MBD</u>, the Smedbergs do not provide any legal authority for the imposition of a duty above the contractual duties owed by WPSBC, and the Court has not identified a case supporting the imposition of such a duty. <u>See</u> <u>MDB</u>, 386 F. Supp. 3d at 591 ("Plaintiffs have not cited to any cases suggesting that a private school owes its students any special duty above and beyond the contract). Thus, as in <u>MBD</u>, the negligence claim is barred by the "gist of the action" doctrine, which prevents plaintiffs from recasting ordinary breach of contract claims as tort claims. <u>Id.</u> The Motion to Dismiss the negligence claim (Count VIII) is granted.

### 3. Counts IX and X – Assault and Battery

An "[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." <u>Betz v. Satteson</u>, 715 F. App'x 213, 217 (3d Cir. 2017) (citing <u>Renk v. City of Pittsburgh</u>, 641 A.2d 289, 293 (Pa. 1994), and quoting <u>Cohen v. Lit Bros.</u>, 70 A.2d 419, 421 (Pa. Super. 1950)).

Defendants argue that the Complaint fails to allege facts sufficient to state a claim for assault or battery, first because the Smedbergs do not allege N.S. was improperly restrained or inappropriately required to wear a helmet and, second, because the allegations are based on speculation. <u>See</u> <u>e.g.</u>, ECF No. 24. Defendants also contend that the Smedbergs do not identify the

personnel who used force to place N.S. in restraints, and therefore fail to state a claim against any individual Defendant. Id.

Upon review, the Smedbergs' allegations that Defendants "forcibly" placed N.S. in a restraint chair for prolonged periods of time and caused injury state a plausible claim for assault and battery. The Smedbergs allege that to prevent self-harm, "the staff used multiple re[s]training devices … such as belting N.S. to a chair for irregular amounts of time," and that he was "often physically restrained and forcibly placed in the restraint chair and made to wear a helmet and gloves for elongated periods of time." ECF No. 1 ¶¶ 47, 51. The use of restraints is described as "a punitive form of discipline," and occurred for "prolonged periods of time." Id. ¶¶ 54, 59. Because of this use of force, the Smedbergs assert that N.S. suffered physical injuries and emotion distress. Id. ¶ 143.

The Smedbergs identify all members of N.S.'s team who may have been personally involved in the commission of any assault or battery. Because N.S. is alleged to be unable to communicate, he cannot independently identify the involved individual Defendants. Under these circumstances, the allegations set forth in the Complaint identifying the potential participants is enough to establish the personal involvement of the Defendants at this stage of the litigation. Angle v. Smith, No. 1:22-CV-0033, 2023 WL 2873255, at *6 (W.D. Pa. Feb. 7, 2023), *report and recommendation adopted*, 2023 WL 2299304 (W.D. Pa. Mar. 1, 2023) (citing Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002)). The Motions to Dismiss Counts IX and X are denied.

### 4. Count XI – Defamation

The Smedbergs bring claims against all Defendants for defamation arising out of a report of suspected abuse to CYS. ECF No. 1 ¶¶ 148-154. Defendants move to dismiss this claim against Benton and Kelly pursuant to the immunity from civil liability provided to mandated reporters of

suspected child abuse under Pennsylvania's Child Protective Services Law ("CPSL"). 23 Pa. C.S. § 6301 *et seq*. ECF No. 14 at 4-6. As to all other Defendants, Defendants move to dismiss the defamation claim based on the lack of allegations that any of them made the report at issue. ECF No. 16 at 2 (Kelly); ECF No. 21 at 16 (Ondek); ECF No. 20 at 3 (Simmens); ECF No. 18 at 17 (Reale); ECF No. 24 at 18-20 (WPSBC).

The CPSL provides that a school employee must report suspected child abuse "if the [school employee] has reasonable cause to suspect that a child is a victim of child abuse. 23 Pa. C.S. § 6311. Failing to do so could expose a mandated reporter to criminal liability. 23 Pa. C.S. § 6319. The CPSL defines child abuse as among other conduct, "[u]nreasonably restraining or confining a child, based on consideration of the method, location or the duration of the restraint or confinement." 23 Pa. C.S. § 6303(b.1)(8)(ii). The stated legislative purpose of the CPSL is "to encourage more complete reporting of suspected child abuse," and the swift and competent investigation of any report. 23 Pa. C.S. § 6302. The CPSL further provides that "[a] person, hospital, institution, school, … acting in good faith shall have immunity from civil and criminal liability that might otherwise result from … [m]aking a report of suspected child abuse or making a referral for general protective services, regardless of whether the report is required to be made under this chapter." 23 Pa. C.S. § 6318. In addition, "[f]or the purpose of any civil or criminal proceeding, the good faith of a person required to report pursuant to section 6311 (relating to persons required to report suspected child abuse) and of any person required to make a referral to law enforcement officers under this chapter shall be presumed." 23 Pa. C.S. § 6318(c).

Because good faith is presumed, 23 Pa. C.S. § 6318(c), the Smedbergs must allege sufficient facts to plausibly establish that a Defendant acted in bad faith. Harrington v. UPMC, No. 20-497, 2022 WL 1606422, at *17–18 (W.D. Pa. May 20, 2022) (citing Heinrich v. Conemaugh Valley

Mem'l Hosp., 648 A.2d 53, 57-59 (Pa. Super. Ct. 1994)). Bad faith was stated in Harrington based on UPMC's report of "unconfirmed" drug tests of mothers to child protection services, despite knowing (1) the tests were unreliable and likely to lead to false positive results, (2) no medical information after delivery of healthy infants to corroborate that the mothers were suspected of illegal drug use, and (3) negative drug tests of infants. "Based upon these averments, the Court [found] that Plaintiffs sufficiently pled facts to raise a reasonable expectation that discovery will reveal evidence of bad faith to overcome the good faith presumption warranting immunity." Id.

The Smedbergs allege that a report of suspected child abuse was submitted by Benton with Kelly's participation and despite their knowledge that the use of restraints was recommended and employed by school staff. ECF No. 1 at ¶¶ 33, 35, 46. At this stage of the litigation, these allegations are sufficient, though barely so, to state a claim for defamation against Benton and Kelly that survives the immunity otherwise provided by the CPSL. The Motions to Dismiss Count XI on their behalf are denied.

However, no other Defendant is alleged to have reported suspected child abuse to CYS or to have pursued the report. To state a claim for defamation under Pennsylvania law, a plaintiff must plead facts sufficient to plausibly show: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; (7) Abuse of a conditionally privileged occasion. 42 Pa. Cons. Stat. § 8343(a); see also McCafferty v. Newsweek Media Grp., Ltd., 955 F.3d 352, 357 (3d Cir. 2020).[10] The failure to allege that Defendants Reale, Simmen, Ondek, or WPSBC published the allegedly defamatory statements is

---

[10] The parties have not addressed Pennsylvania's one-year statute of limitations. See 42 Pa. Stat. & Cons. § 5523(1); ECF No. 1 ¶¶ 33-38.

fatal to their defamation claim against each of them. Thus, the Motions to Dismiss of behalf of Defendants Reale, Simmen, Ondek, and WPSBC are granted as to Count XI.

### 5.  Intentional or Negligent Infliction of Emotional Distress

Defendants move to dismiss the Smedbergs claims for intentional infliction of emotional distress ("IIED") for failure to plead the extreme, outrageous, and intentional conduct required to sustain their claims under Pennsylvania law. ECF No. 24 at 20-21. Defendants also argue that the Smedbergs' claims for negligent infliction of emotional distress are barred by the PSTCA. Id. at 21. Both contentions afford no relief at this stage of the litigation.

An IIED claim requires the plaintiff to plead facts that show that (1) the conduct at issue was extreme and outrageous; (2) the conduct was done intentionally or recklessly; (3) the conduct caused emotional distress; and (4) the resultant distress was severe. Gray v. Huntzinger, 147 A.3d 924, 927 (Pa. Super. Ct. 2016). "As to the fourth element, the plaintiff must allege that the emotional distress was severe enough that he suffered 'some type of resulting physical harm due to the defendant's outrageous conduct.'" D.C. by & through A.T. v. Pittsburgh Pub. Sch., No. 2:19-CV-00012, 2020 WL 3195750, at *9 (W.D. Pa. June 15, 2020) (quoting Reeves v. Middletown Athletic Ass'n, 866 A.2d 1115, 1122 (Pa. Super. Ct. 2004)).

The Smedbergs' allegations in support of their claim for assault – including allegations that Defendants used force to place and belt N.S. in a restraint chair for prolonged periods of time – satisfy the first two elements of an IIED claim. The allegations of psychological and physical harm resulting from the forcible use of restraints satisfy the third and fourth elements. ECF No.1 ¶¶ 61-63. This issue may be revisited at the summary judgment stage after the completion of discovery but, at this early stage of the litigation, the allegations state plausible claims for IIED. Thus, the Motions to Dismiss the IIED claims are denied.

Turning to the Smedbergs' claim for negligent infliction of emotional distress, Defendants argue only that the claim is barred by the PSTCA. ECF No. 24 at 21. The Court has determined that WPSBC is not a state actor and thus is not entitled to the immunity afforded local agencies under the PSTCA. See *infra* at 19-20. The Motions to Dismiss on the basis of the PSTCA are denied.

### G.  Motion to Strike

Defendants move to strike several claims for relief or for damages. Id. at 21-24. In the foregoing discussion, the Court has addressed the Motion to Strike as it relates to the Smedbergs' claims for monetary damages under the IDEA, recovery under the Developmentally Disabled Assistance and Bill of Rights and state regulations, claims for punitive damages and damages for emotional harm under Section 504 and the ADA, and has dismissed each of these claims. Therefore, the Motion to Strike these claims is denied as moot.

The Court has also denied the Motions to Dismiss the Smedbergs' state law claims based on the immunity provided local agencies under the PSTCA. Thus, the Motion to Strike the state law claims based on statutory immunity is denied.

The Motion to Strike punitive damages claims related to the Smedbergs' assault and IIED claims is denied. The allegations that members of N.S.'s team forcibly restrained him with belts in a chair for prolonged periods to discipline him meet the outrageous conduct necessary to support an award of punitive damages. Bert Co. v. Turk, 298 A.3d 44, 61 (Pa. 2023) ("[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others) (citing Chambers v. Montgomery, 192 A.2d 355 (Pa. 1963); Feld v. Merriam, 485 A.2d 742 (Pa.1984)).

Finally, the Motion to Strike the Smedbergs' claims for attorney fees is denied. Titles II and III of the ADA as well as Section 504 permit recovery of attorney fees. See 42 U.S.C. § 2000e–5(k) (Section 504) ("In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs ...."); 42 U.S.C. § 12205 ("the court or agency in its discretion, may allow the prevailing party [in an ADA retaliation case] ... a reasonable attorney's fee, including litigation expenses, and costs ..."); Giterman v. Pocono Med. Ctr., 361 F. Supp. 3d 392, 405 (M.D. Pa. 2019) (attorney fees available under Title III of the ADA). Thus, attorney fees are recoverable under both statutes.

However, to the extent that the Smedbergs assert that they are entitled to recover equitable relief and non-monetary relief under the IDEA, their claims for attorney fees must be deferred pending exhaustion of all IDEA claims, including any claim for attorney fees available under the IDEA. Perez, 598 U.S. at 865; see supra n.5, n.7,

The Smedbergs also seek an award of attorney fees for state law claims. "The American Rule states that a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties or some other established exception." Mosaica Acad. Charter Sch. v. Com. Dep't of Educ., 813 A.2d 813, 822 (Pa. 2002) (citing Lavelle v. Koch, 532 Pa. 631, 617 A.2d 319, 323 (1992)). The Smedbergs fail to point to any exception to the American Rule permitting recovery of attorney fees for their state claim claims. Thus, the Motion to Strike the request for attorney fees is granted.

**H.  Leave to Amend**

"When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set

period of time, unless amendment would be inequitable or futile." <u>Grayson v. Mayview State</u> <u>Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002). Thus, as to any claim not dismissed with prejudice, the Smedbergs are granted leave to file an amended complaint within fourteen days.

## IV.    CONCLUSION

For the foregoing reasons, the Motions to Dismiss are granted in part and denied in part as follows:

(1) The Motions to Dismiss Count I (Fourth Amendment), Count II (§ 1983 Supervisory Liability) and Count III (IDEA) are granted, and these claims are dismissed without prejudice.

(2) The Motions to Dismiss Count IV (22 Pa. Code § 711.46 and 55 Pa. Code § 3800.210), Count VII (Developmental Disabilities Assistance and Bill of Rights Act of 2000, 42 U.S.C. §6010) and the individual capacity claims at Count V (Section 504) and Count VI (ADA) are granted, and these claims are dismissed with prejudice.

(3) The Motions to Dismiss the pendent state law claims pursuant to the PSTCA are denied.

(4) The Motions to Dismiss Count VIII (negligence) are granted, and this claim is dismissed without prejudice.

(5) The Motions to Dismiss Count IX (assault) and Count X (battery) are denied.

(6) The Motions to Dismiss Count XI (defamation) is denied as to against Defendants Benton and Kelly. The Motions to Dismiss is granted as to Defendants Reale, Simmen, Ondek, and WPSBC, and these claim are dismissed as to each of them without prejudice.

(7) The Motions to Dismiss Count XII (IIED and negligent infliction of emotional distress) are denied.

(8) The Motions to Strike are denied as moot as to claims for monetary damages under the IDEA, recovery under the Developmentally Disabled Assistance and Bill of Rights and state regulations, claims for punitive damages and damages for emotional harm under Section 504 and the ADA; denied as asserted under the PSTCA, and denied as asserted for punitive damages for the surviving state law claims. The Motions to Strike the claims for attorney fees are granted.

An appropriate Order follows.

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Dated: September 23, 2024

cc:     All counsel of record by Notice of Electronic Filing